## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-20670-DPG

RAFAEL ARAGON,

     Plaintiff,

v.

NCL (BAHAMAS) LTD., *et al.*,

     Defendants.

_____/

## <u>REPORT AND RECOMMENDATIONS</u>

**THIS CAUSE** is before the Court on Defendant CTF BM Operations Ltd.'s ("CTF") Motion to Dismiss (ECF No. 59) and the Joint Motion to Vacate Rule B Attachment and Garnishment filed by NCL (Bahamas) Ltd., NCL Corp. Ltd., Royal Caribbean Cruises Ltd., and Celebrity Cruises Inc. (collectively, "Garnishees") (ECF No. 58). The Honorable Darrin P. Gayles, United States District Judge, has referred this case to me for a ruling on all pretrial non-dispositive matters and a report and recommendation on all dispositive matters. (ECF No. 73). Plaintiff filed responses to CTF's Motion (ECF No. 67) and the Garnishees' Motion (ECF No. 62). CTF and the Garnishees each filed a reply brief (ECF Nos. 70, 71). Upon thorough consideration of the briefs, the record, and the applicable law, I respectfully **RECOMMEND** that CTF's Motion to Dismiss (ECF No. 59) be **GRANTED IN PART and DENIED IN PART**; and the Joint Motion to Vacate Rule B Attachment and Garnishment (ECF No. 58) be **DENIED without prejudice**.

1

## I.      BACKGROUND

### A.      Factual Background

Plaintiff's Amended Complaint alleges the following facts.[1] The *Norwegian Sky* is a cruise ship owned and operated by Defendant NCL (Bahamas) Ltd. ("NCL"). (ECF No. 37 at ¶¶ 9–10). Before embarking on his anticipated voyage aboard the *Norwegian Sky*, Plaintiff reviewed Defendant NCL's website, which contained information about shore excursions at scheduled stops. (*Id.* at ¶¶ 11–12). Plaintiff became interested in an excursion called "Baha Bay Waterpark at Baha Mar." (*Id.* at ¶ 14). The web page on NCL's website describing the excursion advised, "[t]he height restriction for most attractions is 48" and above, please see bahabay.com for full ride restrictions." (*Id.*). A web page on bahabay.com provided the following description of "Thunderball," a ride at the Baha Bay Waterpark: "Nothing can prepare you for the thrill of plummeting down our high-velocity, 6-story, 79 foot, near-vertical open drop slide Thunderball at Baha Bay waterpark in Nassau, The Bahamas. Feel your adrenaline spike as you[] race towards the earth, safely landing in just six inches of water." (*Id.* at ¶ 15).

After Plaintiff booked passage on the *Norwegian Sky*, NCL sent Plaintiff promotional materials bearing NCL's logo that also provided information about available shore excursions. (*Id.* at ¶ 16). Plaintiff believed that the shore excursions promoted by NCL, including the Baha Bay Waterpark excursion, were exclusively operated by NCL. (*Id.*). NCL advised its passengers not to purchase any excursions, tours, or activities off the cruise ship that were not sold by NCL. (*Id.*).

---

[1] As explained below, the Motions challenge this Court's subject matter jurisdiction. When a defendant facially attacks a complaint for failure to sufficiently allege a basis of subject matter jurisdiction, the allegations in the complaint are assumed to be true for purposes of the motion. *See Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021).

After Plaintiff boarded the *Norwegian Sky* for his voyage, NCL employees conducted a live presentation to passengers, during which NCL discussed the excursion options available to passengers. (*Id.* at ¶ 17).

Plaintiff visited the shore excursion desk aboard the vessel on March 3, 2023. (*Id.* at ¶ 19). At the desk, passengers could access promotional materials, talk to a NCL employee about excursions, and purchase tickets for excursions. (*Id.* at ¶¶ 18–19). Plaintiff asked the NCL employee about the Baha Bay Waterpark excursion. (*Id.* at ¶ 19). She showed Plaintiff promotional material about the excursion, told him that she had participated in the Baha Bay Waterpark excursion herself, assured him that the waterpark and slides were safe, and recommended that he purchase a ticket. (*Id.*). Relying on the assurances made in the promotional material and by the employee, Plaintiff purchased a ticket for the Baha Bay Waterpark excursion while aboard the *Norwegian Sky*. (*Id.* at ¶¶ 19, 22–25).

Plaintiff participated in the Baha Bay Waterpark excursion on March 4, 2023. (*Id.* at ¶ 26). Unbeknownst to Plaintiff at the time, the waterpark was primarily operated by Defendant CTF. (*Id.* at ¶ 27). At the waterpark, Plaintiff went on the Thunderball ride. (*Id.* at ¶ 28). While going down the Thunderball, Plaintiff shattered his calcaneus bone, ruptured his Achilles tendon, and suffered a severe heel laceration. (*Id.*). Plaintiff underwent three surgeries for these injuries. (*Id.*).

**B.      Procedural History**

Plaintiff filed an eleven-count complaint against NCL, CTF, Proslide Technology Inc. ("Proslide"), and Proslide Technology LLC,[2] asserting claims of misleading advertising, negligent misrepresentation, negligence, and products liability. ("Original Complaint"). (ECF No. 1). CTF moved to dismiss the claims against it for lack of personal jurisdiction. (ECF No. 16). In response,

---

[2] Shortly thereafter, Plaintiff voluntarily dismissed his claims against Proslide Technology LLC without prejudice. *See* (ECF Nos. 5, 7).

Plaintiff asked the Court to suspend adjudication of the motion to dismiss and grant Plaintiff leave to conduct jurisdictional discovery. (ECF No. 23). Before the Court ruled on the motion to conduct jurisdictional discovery, Plaintiff filed a motion to amend the Original Complaint (ECF No. 27), which the Court granted. (ECF No. 36).

Plaintiff's Amended Complaint followed. (ECF No. 37). NCL and Proslide answered the Amended Complaint. *See* (ECF Nos. 43, 54, 78).[3]

The Amended Complaint brings the same eleven claims as the Original Complaint, with one addition: a verified claim for *Quasi In Rem* Maritime Rule B Attachment and Garnishment against CTF ("Count XII"). (ECF No. 37 at 35). Count XII asserts that Plaintiff's *in personam* claims against CTF "arise from a maritime tort and/or maritime contract." (*Id.*). Plaintiff's counsel filed an affidavit swearing that to his knowledge, or on information and belief, CTF cannot be found within this District but property belonging to CTF is within the District. (ECF No. 37-1). Accordingly, Plaintiff moved the Court to issue a summons and process of maritime attachment and garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims. (ECF No. 38). The Court granted the motion (ECF No. 40), and the Clerk issued Summonses and Processes of Maritime Attachment and Garnishment to NCL Corp. Ltd.; Magical Cruise Company, Ltd. ("Magical Cruise"); Royal Caribbean Cruises Ltd. d/b/a Royal Caribbean Group; and Celebrity Cruises, Inc. (ECF No. 41).

Magical Cruise answered the Process of Maritime Attachment and Garnishment, stating that "it does not have in its hands any property, goods, chattels, credits, or effects belonging or owing to" CTF in this District. (ECF No. 56 at 2). Plaintiff voluntarily dismissed Magical Cruise

---

[3] Plaintiff and Proslide Technology Inc. have since settled and stipulated to the dismissal of the claims against Proslide with prejudice. *See* (ECF Nos. 74, 82, 84).

as a garnishee without prejudice. (ECF No. 57). No other garnishee has filed an answer. Plaintiff has not moved for compulsory process.

The Garnishees filed the instant Joint Motion to Vacate (ECF No. 58), and CTF filed its Motion to Dismiss (ECF No. 59). Both Motions argue that the Court lacks subject matter jurisdiction over Plaintiff's claims. In the alternative, CTF argues that the Court lacks personal jurisdiction over CTF, the Court should dismiss the claims against CTF on the grounds of *forum non conveniens*, and Counts VII, VIII, and IX of the Amended Complaint fail to state a claim.

## II.     TIMELINESS OF MOTION TO DISMISS

After Plaintiff filed his Amended Complaint, CTF moved to extend the deadline to respond by 30 days. (ECF No. 39). The Court granted the motion and ordered CTF to respond to the Amended Complaint by December 14, 2024. (ECF No. 42). CTF filed its Motion to Dismiss on December 24, ten days after the deadline. (ECF No. 59).

Plaintiff argues that the Motion should be denied as untimely. CTF's counsel proffers that he misread the deadline as December 24 rather than December 14 when marking the due date on his calendar. *See* (ECF No. 70 at 8).

Federal Rule of Civil Procedure 6(b)(1)(B) authorizes the Court to extend the time to do an act after the time has expired if the party failed to act because of excusable neglect. I find that the proffer of CTF's counsel is credible and constitutes excusable neglect. Therefore, I recommend that the Court consider CTF's Motion to Dismiss on its merits.

## III.    COUNTS VIII AND IX SHOULD BE DISMISSED AS WITHDRAWN

In response to CTF's Motion to Dismiss, Plaintiff withdrew Counts VIII and IX. *See* (ECF No. 67 at 31). Therefore, I recommend that the Court dismiss these claims.

IV.    **SUBJECT MATTER JURISDICTION**

A.    **Legal Standard**

To adjudicate the parties' dispute, the Court must have original subject matter jurisdiction over at least one claim. "Federal courts are courts of limited subject-matter jurisdiction." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017). "When a plaintiff files suit in federal court, [he] must allege facts that, if true, show federal subject matter jurisdiction over [his] case exists." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013). "[I]f a complaint's factual allegations do not assure the court it has subject matter jurisdiction, then the court is without power to do anything in the case." *Id.* at 1269.

B.    **Admiralty Jurisdiction**

The Amended Complaint asserts that this Court has admiralty jurisdiction over this action. (ECF No. 37 at ¶ 5). No other basis of subject matter jurisdiction is alleged or argued.

Federal district courts have original jurisdiction of any civil case of admiralty or maritime jurisdiction. 28 U.S.C. § 1333(1); *see also* U.S. CONST. art. III, § 2. "The test for determining the existence of admiralty jurisdiction under 28 U.S.C. § 1333(1) varies depending on the nature of the claim asserted." *Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 864 (11th Cir. 1998).[4] Here, all of Plaintiff's claims are tort claims.

1.    **Law Governing Admiralty Tort Jurisdiction**

Historically, determination of whether a tort fell within the court's admiralty jurisdiction depended entirely on "the locality of the wrong." *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253 (1972). "If the wrong occurred on navigable waters, the action [was] within

---

[4] *Compare Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995), *with Norfolk S. Railway Co. v. Kirby*, 543 U.S. 14, 23–24 (2004) (distinguishing admiralty jurisdiction over contracts and admiralty jurisdiction over torts).

admiralty jurisdiction; if the wrong occurred on land, it [was] not." *Id.* Thus, admiralty courts lacked jurisdiction over claims that a ship's collision with a pier damaged the pier because admiralty law treated the pier as an extension of land. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 532 (1995). Similarly, there was no admiralty jurisdiction when a ship or appurtenance thereof caused injury to an individual standing on the pier because the injury occurred on land. *See Exec. Jet*, 409 U.S. at 255 (discussing *Smith & Son v. Taylor*, 276 U.S. 179 (1928)).

Dissatisfied with these outcomes, Congress enacted the Admiralty Extension Act of 1948, which provides: "The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a). Thus, the modern location test is met when the tort occurred on navigable water *or* when an injury suffered on land was caused by a vessel on navigable water. *Grubart*, 513 U.S. at 534.

The traditional locality rule was further supplemented by the Supreme Court in *Executive Jet* and its progeny. *See Grubart*, 513 U.S. at 532–34. In *Executive Jet*, an aircraft took off from an airport, struck a flock of seagulls, and crashed and sank in the navigable waters of Lake Erie. *Exec. Jet*, 409 U.S. at 250. The Supreme Court held "the mere fact that the alleged wrong 'occurs' or 'is located' on or over navigable waters . . . is not of itself sufficient to turn an airplane negligence case into a 'maritime tort.'" *Id.* at 268. Rather, the wrong must also "bear a significant relationship to traditional maritime activity" to be cognizable in admiralty. *Id.* Because there was no significant relationship between a land-based plane flying from one point in the continental United States to another and traditional maritime activity, the federal courts could not exercise admiralty jurisdiction over the tort claims. *Id.* at 272.

In subsequent cases, the Supreme Court elaborated on the connection requirement. In *Foremost Insurance Co. v. Richardson*, the collision of two pleasure boats on navigable waters satisfied the traditional maritime activity test because of "the potential disruptive impact upon maritime commerce of" such collisions and admiralty law's "traditional concern" for navigation. *Grubart*, 513 U.S. at 533 (quoting *Foremost*, 457 U.S. 668, 675 (1982)) (citation modified). And in *Sisson v. Ruby*, a fire that began on a pleasure boat docked on Lake Michigan and spread to other boats also met the traditional maritime activity test because "the burning of docked boats at a marina on navigable waters [is the sort of incident] likely to disrupt maritime commercial activity," and "the storage and maintenance of a vessel on navigable waters" bears a "substantial relationship with traditional maritime activity." *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. 358 (1990)) (citation modified).

The Supreme Court has summarized the entire rule as follows:

[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id.* (internal quotations and citations omitted).

Applying the rule summarized in *Grubart*, the Eleventh Circuit found that admiralty jurisdiction existed in *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004). Because the case involved "peculiar circumstances," 394 F.3d at 901, the fundamental facts bear reciting.

Plaintiff Doe was a passenger on a pleasure cruise, and Aydin was a ship waiter. *Id.* at 897. Aydin was assigned to wait on the table at which Doe was assigned to eat each night of the voyage.

*Id.* The ship arrived in Bermuda, a scheduled port-of-call. *Id.* At dinner, one of Doe's friends asked Aydin if he knew of any good places to go out on the island. *Id.* Aydin suggested that they go to the Oasis disco club. *Id.* The Oasis was only a short walk from the ship; the ship was clearly visible from the club. *Id.* at 897–98. When Doe's group arrived at the Oasis, they found Aydin and other crew members there. *Id.* at 898. Doe's group and Aydin's group spent time together at the club. *Id.* Later, Aydin escorted some guests back to the ship and then returned to the Oasis. *Id.* Upon returning, he discovered Doe lying on the ground outside, inebriated and sick. *Id.* Aydin escorted Doe in the direction of the ship, but then walked past the ship to a public park, where he raped her. *Id.* The ship was merely four or five steps from the boundary of the park. *Id.* After the assault, Aydin and Doe walked onto the ship together and then went in separate directions. *Id.*

In determining that the location requirement was satisfied, the Eleventh Circuit noted that the "incident effectively began and ended aboard the cruise ship," and the battery itself "occurred very close" to the ship. *Id.* at 901. Neither Doe nor Aydin "traveled any real distance from the ship" at any point. *Id.* The "cruise ship allowed passengers to come and go from the ship as they elected." *Id.* In the panel's view, "there was little practical difference between the port-of-call and other parts of the ship." *Id.*

The *Doe* Court discussed several other reasons for asserting admiralty jurisdiction, too.

> [T]he stop in Bermuda was a scheduled port-of-call, and was an integral part of the on-going cruise or maritime activity in this case. Ports-of-call not only add to the enjoyment of a cruise but form an essential function of the cruise experience. . . . When a passenger selects a particular cruise, ports-of-call or stopovers provide those passengers with the "cruise experience" for which they are paying. Simply put, the destinations or ports-of-call are frequently the main attraction.

*Id.* And:

> More importantly, the purpose behind the exercise of this Court's admiralty jurisdiction is to provide for the uniform application of general maritime law. Plainly, the standard of care that governs when a cruise line's crew member assaults a passenger should be uniform and not vary from port to port on a single cruise. . . .

> We see no reason that cruise lines' liability to their passengers while at a regularly-scheduled port-of-call and in a crew member's company should vary from port to port . . . . [A] ruling that admiralty jurisdiction did not extend literally beyond the gangplank in this case would upset the very uniformity that the Supreme Court has determined is so important for maritime activity.

*Id.* at 902. *Doe* itself recognized that the case "may represent the outer boundaries of admiralty jurisdiction over torts." *Id.* at 901.

Relying on *Doe* and its language about the significance of ports-of-call and the importance of uniformity, some courts of this District have held that a federal court may exercise admiralty jurisdiction where a cruise ship passenger brings tort claims for injuries suffered on land at a scheduled port-of-call or excursion.[5] For several reasons, *Doe* should not be read as holding that *any* injury suffered by a cruise ship passenger in a port-of-call—regardless of the circumstances—is a maritime tort. *See Goodwin v. Rios Tropicales, S.A.*, No. 04-22707-CIV, 2006 WL 8426843, at *6 (S.D. Fla. Feb. 28, 2006) (Jordan, J.).

As an initial matter, "*Doe* involved an extreme set of facts." *In re Heritage Oaks 2013 LLC*, No. 23-CV-81197, 2024 WL 517989, at *2 (S.D. Fla. Feb. 9, 2024). "[T]he Eleventh Circuit went to great lengths to explain why the unique, case-specific facts in *Doe* qualified for admiralty jurisdiction." *Doe v. Classica Cruise Operator Ltd.*, No. 24-CV-80738, 2024 WL 4198169, at *3 (S.D. Fla. Sept. 19, 2024). The "incident effectively began and ended aboard the cruise ship." *Doe v. Celebrity Cruises*, 394 F.3d at 901. The plaintiff was a passenger; the perpetrator was a crew member assigned to wait on her. At port, passengers could come and go from the ship as they

---

[5] *See Belik v. Carlson Travel Grp., Inc.*, 26 F. Supp. 3d 1258, 1264–65 (S.D. Fla. 2012); *Randolph v. Baron*, No. 06-22358, 2007 WL 9706013, at *4 (S.D. Fla. Sept. 28, 2007); *Skeen v. Carnival Corp.*, No. 08-22618-CIV, 2009 WL 1117432, at *2 (S.D. Fla. Apr. 24, 2009); *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196, 2009 WL 8659594, at *3–4 (S.D. Fla. Sept. 14, 2009); *Gentry v. Carnival Corp.*, No. 11-21580-CIV, 2011 WL 4737062, at *1–2 (S.D. Oct. 5, 2011); *Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 2480612, at *5–6 (S.D. Fla. June 3, 2014); *Hoard v. Carnival Corp.*, No. 14-23660-CIV, 2015 WL 1954055, at *2 (S.D. Fla. Apr. 17, 2015); *Manukian v. Carnival Corp.*, No. 15-cv-21437, 2015 WL 9660017, at *2 (S.D. Fla. June 19, 2015); *Brown v. Oceania Cruises, Inc.*, No. 17-22645, 2017 WL 10379580, at *1 (S.D. Fla. Nov. 20, 2017).

pleased. The crew member suggested the club that Doe should visit; it was only a short walk from the ship. Doe found the crew member there and they socialized. Doe agreed to the crew member's offer to escort her back to the ship, trusting him because he was a cruise line employee. The assault occurred mere steps from the ship. In essence, "the Eleventh Circuit treated the location of the injury in *Doe* as being on the ship itself." *Doe v. Classica Cruise*, 2024 WL 4198169, at *3.

In addition, three important features of the Supreme Court's admiralty jurisprudence demonstrate why we should exercise caution before concluding that injuries occurring on land fall within the court's admiralty jurisdiction. First, *Executive Jet* and its progeny did not expand the reach of admiralty jurisdiction but in fact confined it. Second, *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004), did not alter the test enunciated in *Grubart*. Finally, the Supreme Court has rejected attempts to extend admiralty jurisdiction beyond its historic and statutory boundaries even when the federal interest in maintaining uniform rules for vessels on navigable waters was particularly strong.

In *Executive Jet*, the Supreme Court observed that some courts had mechanically applied the locality rule and sustained admiralty jurisdiction despite a "lack of any connection between the wrong and traditional forms of maritime commerce and navigation." *See* 409 U.S. at 255–56. Other courts held that, in addition to maritime locality, "some relationship between the tort and traditional maritime activities" was necessary. *Id.* at 256. *Executive Jet* resolved that split by denying admiralty jurisdiction in those cases "where the maritime locality of the tort [was] clear, but . . . invocation of admiralty jurisdiction seem[ed] almost absurd." *Id.* at 255. "*Executive Jet* did not replace, but rather supplemented, the traditional location requirement for maritime tort jurisdiction. In order for the federal maritime courts to exercise jurisdiction over a tort claim the tort still must occur at a maritime situs." *Harville v. Johns-Manville Prods. Corp.*, 731 F.2d 775, 781–82 (11th Cir. 1984), *overruled on other grounds by Grubart*, 513 U.S. at 544–48; *see also Grubart*, 513

U.S. at 547 ("Although the existing case law tempers the locality test with the *added requirements* looking to potential harm and traditional activity, it reflects customary practice in seeing jurisdiction as the norm when the tort originates with a vessel in navigable waters, and in treating departure from the locality principle as the exception." (emphasis added)).

Throughout his briefs, Plaintiff invokes the Supreme Court's statement in *Kirby* that "the shore is now an artificial place to draw a line," 543 U.S. 14, 25 (2004). Put in proper context, the Court's full sentence reads: "While it may once have seemed natural to think that only contracts embodying commercial obligations between the 'tackles' (*i.e.,* from port to port) have maritime objectives, the shore is now an artificial place to draw a line." *Id. Kirby* is "[t]he Supreme Court's leading decision on [admiralty] *contract* jurisdiction." SCHOENBAUM, 1 ADMIRALTY & MAR. LAW § 3:10 (6th ed.) (emphasis added). The Court carefully distinguished the inquiry for determining whether a contract is a maritime one and that for determining whether a tort is a maritime one. *See Kirby*, 543 U.S. at 23 ("[T]he boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—[are] conceptual rather than spatial . . . . To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case." (internal quotations and citations omitted)). To come within the federal courts' admiralty jurisdiction, a tort must occur on navigable water or the injury must be caused by a vessel on navigable water. *See Grubart*, 513 U.S. at 534. *Kirby* did not alter that requirement.

The Supreme Court has long recognized that the desire for uniform rules of conduct and liability for operators of vessels on navigable waters is "[t]he fundamental interest giving rise to maritime jurisdiction." *Sisson v. Ruby*, 497 U.S. 358, 367 (1990); *see also, e.g., S. Pac. Co. v. Jensen*, 244 U.S. 205, 215 (1917). Yet, the Court declined "to extend shoreward the reach of the maritime law further than Congress has approved" in a factual situation far closer to the historic

ambit of admiralty jurisdiction than cruise ship excursion cases: longshoremen injured on a pier by pier-based equipment while loading a vessel on navigable waters. *See Victory Carriers, Inc. v. Law*, 404 U.S. 202, 211 (1971). There, the Court wrote: "That longshoremen injured on the pier in the course of loading or unloading a vessel are legally distinguished from longshoremen performing similar services on the ship is neither a recent development nor particularly paradoxical." *Id.* at 212. While "[t]here is much to be said for uniform treatment of longshoremen injured while loading or unloading a ship," *id.* at 221 (internal quotations omitted), "in the absence of explicit congressional authorization, we shall not extend the historic boundaries of the maritime law." *Id.* at 214. Thus, the federal interest in uniform maritime rules cannot, in and of itself, justify an expansion of admiralty jurisdiction beyond its historic and congressionally authorized bounds.

### 2.    Application to Plaintiff's Claims

I now assess whether Plaintiff's tort claims are within the Court's original admiralty jurisdiction. Each claim must meet the requirements of location and connection with maritime activity. *Cf. Grubart*, 513 U.S. at 531 ("The parties do not dispute . . . that jurisdiction as to Counts II and III . . . hinges on jurisdiction over the Count I claim." (citing 28 U.S.C. § 1367)).

### a.    Counts III, V, VII, and X

Count III is a claim of General Negligence against NCL, and Count V is a claim of General Negligence against CTF. In pertinent part, Plaintiff alleges that CTF failed to safely operate or maintain the Thunderball ride (ECF No. 37 at ¶ 68b), NCL failed to ensure that CTF maintained the Thunderball ride (*id.* at ¶ 57b), and as a result, Plaintiff suffered physical injuries and other cognizable harms arising out of his physical injuries (*see id.* at ¶¶ 59, 70). Counts VII and X allege

theories of liability under which CTF's failure to provide a safe Thunderball ride is imputed to NCL.[6]

The location test is satisfied when either the tort occurred on navigable water or the injury suffered on land was caused by a vessel on navigable water. *See Anderson v. United States*, 317 F.3d 1235, 1237 (11th Cir. 2003) (quoting *Grubart*, 513 U.S. at 534). "Under the locality test, the tort occurs 'where the alleged negligence took effect,' rather than where the negligent act was done." *Harville*, 731 F.2d at 782 (quoting *Exec. Jet*, 409 U.S. at 266); *accord Sperry Rand Corp. v. Radio Corp. of Am.*, 618 F.2d 319, 321 (5th Cir. 1980) ("[S]o long as the place of the injury . . . occurs upon navigable waters, the fact that the negligent act may have occurred on shore is of no relevance.").[7]

First, all the injuries Plaintiff allegedly suffered from NCL and CTF's failure to provide a safe ride occurred on land. Therefore, as to these claims, Plaintiff cannot satisfy the location test under the first prong because these injuries did not occur on navigable waters; they occurred on land.

Plaintiff argues that "[w]ell settled case law" in the Eleventh Circuit and this District "support[s] a finding that under the facts of this case, the admiralty location test is satisfied." (ECF No. 62 at 8; ECF No. 67 at 8). The argument relies on *Doe* and this Court's decisions in *Balaschak*[8]

---

[6] Count VII alleges that CTF was the apparent agent of NCL and NCL is estopped to deny that CTF was its agent. (ECF No. 37 at ¶¶ 77–78). Count X alleges that NCL's duty to provide Plaintiff with a reasonably safe excursion was non-delegable. (*Id.* at ¶ 104).

[7] *See also GE Seaco Servs., Ltd. v. Interline Connection, N.V.*, No. 09-23864-CIV, 2011 WL 98406, at *3 (S.D. Fla. Jan. 12, 2011); *Chartis Prop. Casualty Co. v. Frenchman's Marina Resort, Ltd.*, No. 13-CV-80933, 2015 WL 12723104, at *4 (S.D. Fla. Jan. 16, 2015).

[8] *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196, 2009 WL 8659594 (S.D. Fla. Sept. 14, 2009).

and *Ash*,[9] while distinguishing our decisions in *Goodwin*,[10] *Doria*,[11] *Thompson*,[12] *Bowen*,[13] *Heritage Oaks*,[14] and *Classica Cruise*.[15] *See* (ECF No. 62 at 8–18; ECF No. 67 at 8–16). Plaintiff contends that his case is similar to *Doe* because "the necessary precursors" occurred on navigable waters (the purchase of the Baha Bay excursion ticket), the cruise was still in progress at the time of injury, his injuries bore a connection to the cruise ship's operation, and the purpose of admiralty jurisdiction would be upset if the Court declines to extend admiralty jurisdiction to these circumstances.

But this case is not like *Doe*. In *Doe*, the "incident effectively began and ended aboard the cruise ship." *Doe*, 394 F.3d at 901. The intentional tortfeasor was a crew member of the vessel. Passengers could come and go from the ship as they pleased. The entire incident occurred within the shadow of the ship, and the assault occurred mere steps from the ship.

None of Plaintiff's allegations suggest that the Baha Bay waterpark was particularly close to the docked vessel. Plaintiff was participating in a ticketed excursion off the ship; he was not coming and going from the ship at the time of injury. No employees of NCL operated the waterpark itself. Plaintiff has not pled facts to support a finding that his injuries occurred on navigable waters, literally or effectively.

However, this does not end the locality inquiry because if the injury was caused by a vessel on navigable waters, then the location test is met. Curiously, Plaintiff argues that the location test is satisfied because Plaintiff's injuries suffered on land were caused by a vessel on navigable water. *See* (ECF No. 62 at 4–7; ECF No. 67 at 6–8). The argument goes: "NCL's vessel, the *Norwegian*

---

[9] *Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 2480612 (S.D. Fla. June 3, 2014).

[10] *Goodwin v. Rios Tropicales, S.A.*, No. 04-22707-CIV, 2006 WL 8426843 (S.D. Fla. Feb. 28, 2006).

[11] *Doria v. Royal Caribbean Cruises, Ltd.*, No. 19-cv-20179, ECF No. 35 (S.D. Fla. Sept. 4, 2019).

[12] *Thompson v. Carnival Corp.*, No. 20-22217-Civ, 2021 WL 7542954 (S.D. Fla. Sept. 17, 2021).

[13] *Bowen v. Shore Excursions Grp., LLC*, No. 23-60585-CIV, 2023 WL 11994332 (S.D. Fla. Oct. 12, 2023).

[14] *In re Heritage Oaks 2013 LLC*, No. 23-CV-81197, 2024 WL 517989 (S.D. Fla. Feb. 9, 2024).

[15] *Doe v. Classica Cruise Operator Ltd.*, No. 24-CV-80738, 2024 WL 4198169 (S.D. Fla. Sept. 19, 2024).

*Sky*, while on navigable waters, caused Plaintiff's injury" because "the promotional materials NCL and CTF made available to Plaintiff while aboard the cruise vessel states that if Plaintiff took the Thunderball ride, he would 'safely land[] in just six inches of water.'" (ECF No. 62 at 4; ECF No. 67 at 6). The Admiralty Extension Act extends admiralty jurisdiction to "cases of injury . . . caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a). By Plaintiff's own logic, Plaintiff's injuries were caused by the promotional materials *NCL and CTF* created and distributed; they were not "caused by a vessel on navigable waters."

Finally, Plaintiff briefly argues, in footnotes, that this case is analogous to *Anderson v. United States*, 317 F.3d 1235 (11th Cir. 2003). There, the Eleventh Circuit held that a fighter jet that departed from the USS John F. Kennedy was an appurtenance of the carrier when the jet released two bombs, which injured the plaintiff.

Maritime law "treats an 'appurtenance' attached to a vessel in navigable waters as part of the vessel itself." *Id.* at 1237 (quoting *Grubart*, 513 U.S. at 535). "To determine whether an item is an appurtenance to a vessel, we must look to the relation it bears to the actual service of the vessel." *Id.* at 1238 (citation modified). An appurtenance is "any specifically identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation, or mission." *Id.* (internal quotations omitted). The Eleventh Circuit reasoned that the jet was on a mission of the U.S. Navy. *Id.* A Navy Captain testified that an aircraft carrier's jets "are the carrier's primary offensive and defensive weapons. . . . The aircraft are an extension of the ship's ears (electronic monitoring) [and] eyes (surveillance) . . . ." *Id.* Thus, the Court concluded that the jet was an appurtenance and the location test was satisfied.

Plaintiff merely states *Anderson*'s holding and has not explained how this case is analogous to *Anderson*. *See* (ECF No. 62 at 8 n.6; ECF No. 67 at 10 n.5). Plaintiff has not cited, and I have

not found, any case of this circuit where a court extended the reasoning of *Anderson* to other objects that were not attached to a vessel or tortfeasors who were not operating a vessel. In reaching the conclusion that the jet was an appurtenance, the Eleventh Circuit relied on the testimony that a naval carrier's aircrafts are an extension of the ship's ears and eyes. Plaintiff has not identified an object that he contends is an appurtenance of the *Norwegian Sky*.

In summary, Counts III and V allege that because of NCL and CTF's failure to provide a safe Thunderball ride, Plaintiff suffered physical and psychological injuries at the Baha Bay Waterpark. Those injuries occurred on land, not on navigable waters. The injuries were not caused by a vessel on navigable waters or an appurtenance thereof. Because the requirement of location is not satisfied, the Court lacks admiralty jurisdiction over these claims. Counts VII and X allege theories that impute liability for CTF's negligence to NCL; because the Court lacks admiralty jurisdiction over the underlying negligence claim (Count V), the Court also lacks admiralty jurisdiction over Counts VII and X.

### b.    Counts I, II, IV, and VI

Count I is a claim for Misleading Advertising in violation of section 817.41 of the Florida Statutes against NCL and CTF. Count II is a claim for Negligent Misrepresentation against NCL and CTF. The principal allegations underlying Counts I and II are essentially the same: Defendants' promotional material represented that riders of the Thunderball "safely land[] in just six inches of water" (ECF No. 37 at ¶¶ 21, 42, 50); Plaintiff would not have purchased a Baha Bay excursion ticket, or thus taken the Thunderball ride, but for that representation (*id.* at ¶¶ 24, 46, 54); Plaintiff did not land safely in six inches of water; and consequently, Plaintiff suffered injuries (*id.* at ¶¶ 25, 47, 55).

Count IV is a claim for Negligent Failure to Warn against NCL, and Count VI is a claim for Negligent Failure to Warn against CTF. These Counts allege that NCL and CTF failed to warn

Plaintiff that the Thunderball could cause him serious injury, failed to warn him that CTF would not safely operate or maintain the Thunderball, and failed to warn him that CTF's employees were not properly trained or supervised. *See* (*id.* at ¶¶ 63, 74). As with Counts I and II, Counts IV and VI allege that Plaintiff would not have purchased a ticket for the excursion had Defendants adequately warned Plaintiff. *See* (*id.* at ¶¶ 64, 75).

For each of these four claims, at least one of Plaintiff's alleged injuries is his purchase of a Baha Bay excursion ticket that he would not have purchased but for Defendants' misrepresentations and failure to warn. This is a critical allegation for purposes of the location test. In determining maritime locality, a tort occurs "where the alleged negligence took effect." *Harville*, 731 F.2d at 782. We must look at "the place of the injury." *Sperry Rand Corp.*, 618 F.2d at 321; *see also Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 288–89 (5th Cir. 1989). Plaintiff alleges that Defendants' misrepresentations and failure to warn caused him to buy the Baha Bay excursion ticket. (ECF No. 37 at ¶¶ 24, 46, 54, 64, 75). Plaintiff further alleges that he purchased the ticket while aboard the *Norwegian Sky*. (*Id.* at ¶ 19). Thus, the alleged negligence took effect—at least in part—on navigable waters. I am therefore satisfied that the location test is met with respect to Counts I, II, IV, and VI.

The four claims must also satisfy the connection requirement. The first issue of the connection test assesses whether the "general features of the *type of incident*" has "a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534 (emphasis added). The second issue asks whether the "general character of the *activity giving rise* to the incident" bears a "substantial relationship to traditional maritime activity." *Id.* (emphasis added) (internal quotations omitted).

Naturally, the Garnishees narrowly define the scope of Plaintiff's incident and the activity giving rise to it. Limiting the analysis to injuries at land-based waterparks, Garnishees argue that

this type of incident does not have the potential to affect maritime commerce, and the operation of waterparks (the activity giving rise to Plaintiff's incident) does not have a substantial relationship to traditional maritime activity. *See* (ECF No. 58 at 10–12). But these characterizations of the incident and preceding activity are too narrow.

The first issue of the connection test "turns . . . on a description of the incident at an intermediate level of possible generality." *Grubart*, 513 U.S. at 538. The Supreme Court case *Sisson v. Ruby* involved a fire that began in a pleasure vessel's washer/dryer unit and spread to other boats at a marina. *See* 497 U.S. at 360. "To speak of the incident as 'fire' would have been too general to differentiate cases; at the other extreme, to have described the fire as damaging nothing but pleasure boats and their tie-up facilities would have ignored, among other things, the capacity of pleasure boats to endanger commercial shipping . . . ." *Grubart*, 513 U.S. at 538–39. The Court "rejected both extremes and instead asked whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id.* at 539.

Similarly, to describe Plaintiff's incident merely as a "waterpark injury" would ignore the capacity of personal injuries on cruise ship excursions to impact maritime commerce—namely, the cruise line industry. "[T]he cruise line industry is maritime commerce." *Doe*, 394 F.3d at 900. Cruise ship passengers' injuries "on an excursion because of the negligence of a cruise ship has a potentially disruptive impact on maritime commerce." *Balaschak*, 2009 WL 8659594, at *4 (internal quotations omitted). The first issue of the connection test is satisfied.

As for the second connection inquiry, the activity giving rise to Plaintiff's incident is not only the operation of a waterpark, but also the promotion and sale of the Baha Bay excursion during a pleasure cruise. *See id.* ("The general character of the activity giving rise to the incident here is, among other things, Celebrity's alleged negligence in selecting and promoting the" excursion.). "[C]ruise line ports-of-call stops and onshore excursions are traditional maritime

activities." *Skeen v. Carnival Corp.*, No. 08-22618-CIV, 2009 WL 1117432, at *3 (S.D. Fla. Apr. 24, 2009) (citing *Doe*, 394 F.3d at 902); *see Belik v. Carlson Travel Grp., Inc.*, 26 F. Supp. 3d 1258, 1265 (S.D. Fla. 2012); *Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 2480612, at *7 (S.D. Fla. June 3, 2014).

CTF emphasizes that in *Ash*, the second connection issue was only "barely" met. *See* 2014 WL 2480612, at *6. In CTF's view, the central factor that satisfied the substantial relationship inquiry in *Ash* and *Balaschak* was the fact that the land-based excursion defendants "provided regularly scheduled transportation to and from the excursion and the plaintiff[s] [were] injured while in transit." (ECF No. 70 at 4). Neither case was so specific. In *Ash*, the responses to the garnishments demonstrated that the excursion defendant was "under contract to Royal Caribbean (and other cruise lines) to provide shore excursions." 2014 WL 2480612, at *7. Plaintiff alleges the same in his Amended Complaint. *See* (ECF No. 37 at ¶¶ 29, 73, 98). *Ash* accentuated the significance of the excursion provider's contractual relationship with the cruise line by contrasting such a company with "a taxi owner who *fortuitously* picks up cruise passengers." 2014 WL 2480612, at *7 (emphasis added).

In this case, Defendants' alleged misleading advertising, negligent misrepresentation, and failure to warn took effect, in part, on navigable waters. The incident caused by these torts has the potential to disrupt maritime commerce. And the promotion and sale of pleasure cruise excursions has a substantial relationship to traditional maritime activity. Therefore, the Court has admiralty jurisdiction over Counts I, II, IV, and VI.

### C. Counts III, V, VII, and X Should Be Dismissed for Lack of Subject Matter Jurisdiction

For the reasons explained above, the Court lacks admiralty jurisdiction over Counts III, V, VII, and X of the Amended Complaint. The Amended Complaint does not contain any alternative

basis on which the Court has subject matter jurisdiction. Nor has Plaintiff argued that the Court has a source of subject matter jurisdiction other than admiralty jurisdiction.

Federal Rule of Civil Procedure 8(a)(1) requires a plaintiff to plead "a short and plain statement of the grounds for the court's jurisdiction." On this record, the failure to plead an alternative basis of subject matter jurisdiction is not merely a technical deficiency. Defendants have not been put on notice that another basis of subject matter jurisdiction may exist, and thus, they have not yet had a fair opportunity to demonstrate why the Court cannot or should not exercise subject matter jurisdiction under a statute other than 28 U.S.C. § 1333.

Because admiralty jurisdiction is the only basis of jurisdiction asserted and these four Counts are not within the Court's admiralty jurisdiction, the Could should **DISMISS** Counts III, V, VII, and X for lack of subject matter jurisdiction.

## V.      MARITIME ATTACHMENT

### A.      Legal Background

Codified in Rule B of the Supplemental Admiralty Rules, maritime attachment enables a plaintiff in admiralty to obtain *in personam* jurisdiction over a defendant who is not found in the district but whose property is found in the district. *See World Wide Supply OU v. Quail Cruises Ship Mgmt.*, 802 F.3d 1255, 1262 (11th Cir. 2015). The practice predates adoption of the Constitution. *See Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. De Navegacion*, 773 F.2d 1528, 1532 (11th Cir. 1985). "It has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684 (1950).

To obtain a writ of marine attachment, a plaintiff must file a verified complaint and affidavit "stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district." *See* Fed. R. Civ. P., Supp. R. B(1)(a)–(b). "Rule B attachments are

known as 'quasi-in-rem' proceedings, because they are not actions directly against the *res* as a fictitious person, as is the case in *in rem* actions, but are actions against a party who is not personally present in the district but whose property is present." *World Wide Supply*, 802 F.3d at 1259–60. "[A] good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court is *the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res*." *Id.* (quoting *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992)).

If the prerequisites to obtain a writ of marine attachment are met, Rule B allows a plaintiff to attach the defendant's property found in the district, prosecute his *in personam* admiralty claims, and, if successful, gain a judgment up to the value of the property attached. *See Limonium Mar., S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 605 (S.D.N.Y. 1997) (citing *Robinson v. O.F. Shearer & Sons, Inc.*, 429 F.2d 83, 86 (3d Cir. 1970)). In Rule B proceedings, "the district court has plenary jurisdiction over [the *res*], the plaintiff, . . . the defendant . . . , and has authority to dispose of the case in any manner allowed by controlling law." *See Great Prize*, 967 F.2d at 160.

### B.       Personal Jurisdiction

CTF's argument that the Court lacks personal jurisdiction is inapposite to maritime attachment. The fact that CTF is not found in this District is what enables the Rule B proceeding. *See, e.g., World Wide Supply*, 802 F.3d at 1262 ("Rule B . . . requires, as a precondition to its application, that the defendant not be present in the district . . . .").

### C.       Request for Rule E(4)(f) Hearing and the "Motion to Vacate"

In its Motion to Dismiss, CTF requests "an immediate hearing on the Garnishment Order" pursuant to Rule E(4)(f). (ECF No. 59 at 6). The Garnishees have denominated their Motion as a "Motion to Vacate Rule B Attachment and Garnishment." (ECF No. 58). They also cite to Rule E(4)(f) and assert: "Through this motion, Garnishees invoke this rule." (*Id.* at 5). However, despite

its title, the Motion to Vacate travels entirely on the argument that the Court lacks subject matter jurisdiction.

Supplemental Admiralty Rule E(4)(f) provides that "*[w]henever property is . . . attached,* any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the . . . attachment should not be vacated." Fed. R. Civ. P., Supp. R. E(4)(f) (emphasis added).[16] "Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the [defendant] a prompt post-seizure hearing at which he can attack the complaint . . . and any other alleged deficiency in the proceedings." Advisory Comm. Note, 105 F.R.D. 179, 235; *accord S&S Diesel Marine Servs., Inc. v. M/V F-TROOP*, No. 11-60020-CIV, 2011 WL 1899402, at *8 (S.D. Fla. May 18, 2011); *Int'l Ship Repair & Mar. Servs., Inc. v. Barge B. 215*, 418 F. Supp. 3d 1051, 1054–55 (M.D. Fla. 2019). Due process does not require pre-seizure notice and a hearing. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974).

In this case, the Court has issued Processes of Maritime Attachment and Garnishment to the Garnishees, but no Garnishee has answered the Process stating that they have property belonging or owing to CTF in this District. More importantly, no such property has been attached. Thus, a post-attachment hearing is premature. For this reason, I recommend that the Garnishees' Motion to Vacate be **DENIED**, without prejudice to renew should Plaintiff attach CTF's property.

---

[16] At such hearing, the plaintiff has the burden to show that: (1) he has a prima facie *in personam* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found in the district; and (4) there is no statutory or maritime bar to attachment. *See Zambrano v. Vivir Seguros, C.A.*, No. 16-cv-22707, 2017 WL 347078, at *3 (S.D. Fla. Jan. 24, 2017). The plaintiff must specifically establish an admiralty claim against the Rule B *quasi in rem* defendant; a claim within the court's supplemental jurisdiction will not do. *See Ash*, 2014 WL 2480612, at *3.

## VI.    FORUM NON CONVENIENS

CTF next contends that the Court should dismiss the case under the doctrine of *forum non conveniens* because the Bahamas is the preferred forum for this suit.

A court in admiralty may, in appropriate circumstances, dismiss a case based on the doctrine of *forum non conveniens*. *See, e.g., Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *7 (S.D. Fla. Sept. 26, 2012) (Rosenbaum, J.). Courts have dismissed maritime attachment actions on *forum non conveniens* grounds. *See Great Prize*, 967 F.2d at 160–61; *Golden Horn Shipping Co. v. Volans Shipping Co.*, No. 14-CV-2168, 2017 WL 3535002 (S.D.N.Y. Aug. 16, 2017).[17]

### A.    Legal Standard

A plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). But a court may properly dismiss a case based on the doctrine of *forum non conveniens* "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The moving defendant must establish "that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). "[I]n considering the private interests of the litigants, some important considerations are: relative ease of access to sources of proof; ability to obtain witnesses; possibility of view of premises, if relevant; and all other practical problems that make trial of a

---

[17] Plaintiff cites *Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341 (M.D. Fla. 2001), for the proposition that *forum non conveniens* is inapplicable in maritime attachment proceedings. Despite the language Plaintiff quotes in his brief, the *Linea* court performed the multifactor *forum non conveniens* analysis and denied the request "after weighing the foregoing public and private concerns." *Id.* at 1353.

case easy, expeditious and inexpensive." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (internal quotations omitted). The public interest factors include "court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties [of] resolving conflict-of-laws problems and applying foreign law." *Id.*

###### B.    Analysis

CTF's reply brief did not address the *forum non conveniens* arguments made in Plaintiff's response, which, if not a full concession on the strength of Plaintiff's venue choice, leaves Plaintiff's arguments on forum uncontested. There is no dispute that CTF is amenable to service in the Bahamas and the Bahamas provides a forum for tort litigation. But the private interest factors weigh strongly in Plaintiff's favor, and there are public interest factors supporting both forums.

Plaintiff is a Florida resident. The "presumption in favor of the plaintiffs' initial forum choice . . . is at its strongest when the plaintiffs are citizens, residents, or corporations of" the United States. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). Although dismissal is not "automatically barred when a domestic plaintiff has filed suit in his home forum," the defendant must provide "positive evidence of unusually extreme circumstances," and the court "should be thoroughly convinced that material injustice is manifest before . . . deny[ing] a United States citizen access to the courts of this country." *Id.* (citation modified).

CTF has not met that burden. Without identifying any particular evidence or witnesses, CTF argues that because Plaintiff's injury occurred in the Bahamas, no "witness, document, or exhibit—other than the Plaintiff and his medical treaters—is available or can be authenticated in this forum," and all waterpark employees, who are "[r]elevant willing witnesses," are Bahamian residents who are not subject to process in Florida. (ECF No. 59 at 15–16).

In assessing the litigants' access to sources of evidence, a court must "consider the elements of the plaintiffs' causes of action, consider the evidence necessary to prove or disprove each element, and make a reasoned assessment as to the likely location of such proof." *Giglio*, 2012 WL 4477504, at *15 (citing *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003)). Counts I and II broadly allege that Plaintiff reviewed Defendants' promotional material and relied on misrepresentations therein when he purchased a ticket for the excursion and decided to go on the Thunderball ride. None of the alleged misrepresentations were made at the waterpark. Thus, CTF has not demonstrated that any evidence relevant to Counts I and II resides in the Bahamas.

Regarding Plaintiff's Failure to Warn and General Negligence claims (if Plaintiff is given leave to replead General Negligence), I recognize that a small number of witnesses may reside in the Bahamas and these witnesses may be important to the issues of whether Defendants breached a duty owed to Plaintiff and the extent of Plaintiff's injuries. However, Plaintiff and his treaters are in Florida. CTF's limited proffer does not enable the Court to assess the relative importance of witnesses in each forum or compare the potential costs of having the trial in one forum versus another. *Cf. Giglio*, 2012 WL 4477504, at *17–18; *St. Aubin v. Island Hotel Co. Ltd.*, No. 16-cv-22023, 2017 WL 998298, at *4.

The Court cannot disregard evidence that non-parties are unwilling to testify in a forum far from their home. *See Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1052 (11th Cir. 2019). CTF has provided no such evidence.

Analysis of the private factors also includes "all other practical problems that make trial of a case easy, expeditious and inexpensive." *La Seguridad*, 707 F.2d at 1307. It is reasonable to infer that the costs Plaintiff would bear if he was required to bring suit in the Bahamas far outstrip those costs CTF will incur to make some evidence residing in the Bahamas available for trial in the United States. Further, Plaintiff proffers that his contract with Defendant NCL designates Florida

as the exclusive forum for any disputes between them. No party has refuted this. If that is the case, Plaintiff's costs would be further exacerbated by being forced to litigate claims against NCL in one forum and claims against CTF in another.

I conclude that the private interest factors weigh against dismissal.

The Court must also consider the public interest factors. *See Fresh Results*, 921 F.3d at 1051–52. The incident occurred in the Bahamas, and in most circumstances, this factor would weigh in favor of dismissal. *See, e.g.*, *Leon*, 251 F.3d at 1315 ("Ecuador has an interest in determining the extent of damages payable when planes crash in Ecuador on Ecuadorian citizens."). However, Plaintiff's incident is not completely local to the Bahamas either, because CTF has chosen to do business with NCL for the express purpose of bringing foreign cruise ship passengers to its waterpark.

Without explanation, CTF asserts, "[i]f this case is tried in Florida, this Court will likely need to apply Bahamian law in this case." (ECF No. 59 at 17). Plaintiff disagrees and states, "United States law is applicable to this matter." (ECF No. 67 at 25). The parties have not briefed a choice-of-law dispute and it would be premature to make a determination. CTF has not met its burden of showing that the difficulty of applying foreign law weighs in favor of dismissal.

On balance, the public interest factors do not weigh strongly in favor of one forum over another.

Finally, as discussed above, Plaintiff would be greatly inconvenienced and would likely incur significantly more litigation costs if his claims against CTF were dismissed. Thus, he cannot "reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon*, 251 F.3d at 1311. Because the private interest factors weigh in Plaintiff's favor, the public interest factors favor neither forum, and dismissal would cause undue inconvenience to Plaintiff, I recommend that CTF's motion to dismiss on grounds of *forum non conveniens* be **DENIED**.

## VII.    RULE 12(b)(6)

The only claim CTF has moved to dismiss for failure to state a claim that Plaintiff has not withdrawn is Negligence Based on Apparent Agency (Count VII). For the reasons discussed above, I recommend that the Court dismiss Count VII for lack of subject matter jurisdiction.

However, I note that CTF's *de minimis* argument states only that a claim of apparent agency requires a representation by a principal that caused Plaintiff to believe that the agent is authorized, and CTF's attached exhibits prove that CTF is an independent contractor of NCL. *See* (ECF No. 59 at 18). On a motion to dismiss under Rule 12(b)(6), the Court assumes all factual allegations in the complaint are true. The Amended Complaint patently alleges that NCL made representations to Plaintiff which may have caused him to believe that CTF was NCL's agent. *See* (ECF No. 37 at ¶ 79).

## VIII.    RECOMMENDATIONS

For the foregoing reasons, I respectfully **RECOMMEND** that:

1. CTF's Motion to Dismiss (ECF No. 59) be **GRANTED IN PART and DENIED IN PART**.

2. Counts III, V, VII, and X of the Amended Complaint be **DISMISSED** for lack of subject matter jurisdiction.

3. CTF's motion to dismiss the claims against CTF on the grounds of *forum non conveniens* be **DENIED**.

4. The Joint Motion to Vacate Rule B Attachment and Garnishment (ECF No. 58) be **DENIED without prejudice**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Darrin P. Gayles, United States District Judge, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file

28

objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 10th day of July, 2025.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE